In re KDT INDUSTRIES, INC., f/k/a King's Department Stores, Inc., d/b/a King's, Barker's, Kens, Coronet Cosmetics, Barkleigh, Mammoth Mart, et al.

KDT INDUSTRIES, INC., et al., Plaintiffs-Debtors,

v.

C & C UMBRELLA, Defendant.

Nos. 82 B 11453–82 B 11515, 82 B 11687–82 B 11718 and 83 B 11642–83 B 11645.

Adv. No. 84–5705A.

United States Bankruptcy Court, S.D. New York.

June 20, 1985.

See also, 30 B.R. 252; 31 B.R. 61; and 32 B.R. 852.

Levin & Weintraub & Crames, New York City (Richard S. Miller, of counsel), James B. Matthews, Auburndale, Mass., for plaintiffs-debtors.

Gerald E. Ross, New York City, for defendant.

## MEMORANDUM DECISION AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

On June 21, 1984, KDT Industries and its related debtors ("KDT") commenced an action against the defendant, C & C Umbrella ("C & C), seeking to recover an alleged preferential transfer in the amount of $12,955.64. KDT made payment of $12,955.64 to C & C on July 20, 1982. On August 5, 1982 KDT and certain of its affiliates filed petitions for relief under Chapter 11. Additional affiliates filed Chapter 11 petitions on August 26, 1982.[1] An answer was required to be filed within thirty days of the issuance of the summons on June 21, 1984. However, no answer was filed until February 21, 1985.

In its answer, C & C admits receipt of the $12,955.64 payment on account of an antecedent debt. C & C states that the payment was made on account of umbrellas sold to KDT pursuant to two invoices dated April 22, 1982 and that payment was

---

1. A final group of related debtors filed Chapter 11 petitions on November 14, 1983. However, the debtors in this latter group are not involved in the issues presented by this case.

received in the ordinary course of business. The answer asserts as an affirmative defense that

"from in or about September 1982 through December 1982 defendant [C & C] sold merchandise to plaintiff [KDT] for a total invoice price of approximately $17,777.59.

"8. Accordingly, defendant gave new value to or for the benefit of the plaintiff and plaintiff is barred from avoiding the transaction complained of under 11 U.S.C. § 547(c)(4)."

C & C filed a motion for summary judgment on May 2, 1985. The Rule 3(g) Statement submitted with the summary judgment motion admits that C & C received payment for all but $626.45 of the merchandise sold to KDT between September 1982 and December 1982.

KDT's Rule 3(g) Statement, filed in response to the summary judgment motion denies that there is $626.45 still due to C & C on the post-petition purchases and asserts that all of those purchases have been paid for in full. KDT argues that the new value defense asserted by C & C is defective for two reasons: (1) the new value must have been extended during the 90-day prepetition preference period and not after the petition was filed, as was the case here; and (2) the new value must remain unpaid, which was also not the case here.

Bankruptcy Code § 547(c)(4) provides as follows:

"(c) The trustee may not avoid under this section a transfer

\*     \*     \*     \*     \*     \*

"(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

"(A) not secured by an otherwise unavoidable security interest; and

"(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

The payment by KDT of an expense of administration, i.e., the payment to C & C with respect to the post-petition purchases, was not an avoidable transfer.[2] Thus, Code § 547(c)(4)(B) would preclude C & C from asserting the new value defense as it has been paid for any new value by a nonavoidable transfer. See *In re Formed Tubes, Inc.*, 46 B.R. 645, 646–7 (Bankr.E.D. Mich.1985).

Because C & C was paid for any new value given, it is unnecessary for the court to resolve with finality the issue of whether the new value defense is limited to new value advanced during the 90-day pre-petition preference period. Although initially skeptical, this court has concluded that Code § 547(c)(4) probably permits assertion of the new value defense for transfers made to the debtor in possession. The definition of "debtor" as used in Code § 547(c)(4) is found in Code § 101(12) which states that the term "debtor" means "person or municipality concerning which a case under this title has been commenced." Code § 1101 states that in a Chapter 11 case " 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case." If debtor in possession means debtor, it can also be argued that the converse is true, that debtor means, or at least includes, debtor in possession. Under that reasoning, the reference to the debtor in Code § 547(c)(4) would include a reference to the debtor in possession.

The new value defense could only be successfully asserted when assets are insufficient to permit full payment to administration creditors. The objection that might be raised is that permitting the defense would have the effect of allowing a post-petition claim to be set off against a pre-petition one. The cases denying such a setoff involve, however, attempts by a prepetition creditor to avoid its *post*-petition obligation to the debtor in possession through offsetting its claim, on which it

---

**2.** KDT's Chapter 11 plan was confirmed in mid-1984 and administration creditors were paid in full.

might expect to receive a dividend of only a few cents, against its obligation to the debtor in possession due in full. The preference situation is the reverse one—the creditor is attempting to offset its post-petition claim against the debtor on which it is entitled to receive payment in full before any distribution is made to unsecured creditors against its pre-petition liability on a preference. As both claims require that they be paid by both parties in 100% cent dollars, no imbalance occurs by permitting them to be set-off one against the other. However, even if C & C were correct in this aspect of its argument, C & C would still fail because the new value was paid for by an unavoidable transfer.

C & C's motion for summary judgment will be denied as the court finds that the new value defense is not available to C & C, as set forth above. KDT has cross-moved for judgment in its favor. C & C asserted in its answer that it was not served with a copy of the summons and adversary complaint. This case is one of several hundred preference and receivables actions commenced by KDT. KDT's counsel has been meticulous in the handling of the multitude of paperwork in these cases and more than accommodating to informal requests for more time, as the lengthy delay between the time an answer was due and when one was filed in this case indicates. An affidavit of service by mail of the summons and complaint on June 25, 1984 was filed with the court on July 27, 1984. On August 10, 1984, C & C was given notice by mail that its default had been noted at the initial pretrial conference and that on September 17, 1984, KDT would seek entry of a default judgment. Thereafter, on November 21, 1984, C & C was sent by mail a copy of the judgment KDT proposed that the court enter on December 5, 1984. By notice dated and mailed December 21, 1984, C & C was advised the matter was adjourned until January 16, 1985. All of the affidavits of service appear to be in proper form and give C & C's address as 14 East 33rd Street, New York, New York 10016. C & C did not retain counsel until after January 16, 1985. The court cannot determine from the present papers whether C & C continues to rely on this defense.

As a final note, it is clear that, if KDT has in fact failed to pay for all of its debtor in possession purchases from C & C, it would have both the funds and obligation to do so. Since there is apparently a dispute relative to whether there is a balance due from either the debtor or the debtor in possession, which balance in any event C & C has written off, the court is unable to determine whether C & C would be entitled to an offset.

C & C is directed to advise the court in writing on or before July 15, 1985, if it continues to contest due service of process. KDT is directed to advise the court in writing on or before July 25, 1985, whether it will continue to contest the existence of the amount C & C claims is unpaid and whether KDT believes that amount to be a pre-petition or a post-petition obligation.

It is so ordered.